Burke, J.
(dissenting). This case presents an important question in the law of commercial transactions in which I believe this court has been misled by linguistics at the expense of considerations of justifiable expectations based on custom and usage. We have here a dealer whose business it is to sell automobiles and a bank whose business it is to finance such sales — at a substantial profit. The dealer assigned to the bank a retail installment sales contract in which the dealer warranted: “ The undersigned warrants that the said Retail Instalment Contract evidences a bona fide sale to the Buyer named therein of the goods described therein; that said Contract is valid, subsisting and genuine and is in all respects what its [sic] purports to be; that all statements of fact therein contained are true; that the parties to said Contract had capacity to contract ; that said property has been duly delivered by the undersigned to, and accepted and retained by, the Buyer; that no payment has been made on account of said Contract except as therein set forth and that there are no offsets, counterclaims or other defenses thereto; that at the time of said sale title to said property was in the undersigned and such property now is free and clear of all liens and encumbrances whatsoever except as provided in said Contract; that the undersigned has no knowledge of any fact which would impair the validity or enforceability of said Contract or render it valueless or less valuable; that Certificate of Title showing encumbrance in favor *620 of the County Trust Company has been or will forthwith be applied for if required by law; and that a true executed copy of said Contract was delivered to the Buyer at the time of execution thereof.” (Emphasis added.)
The dealer also took down, on a separate form “ credit application ”, the prospective purchaser’s name, address, length of residence, place of employment, length of employment, and similar credit information. This application obviously contained no dealer warranty of accuracy or truthfulness. Before agreeing to accept assignment of the contract, which, incidentally, was “without recourse” in case of default, the bank admittedly conducted an investigation of the purchaser’s reliability as a credit risk. For this purpose it relied not only on its own efforts but employed the Credit Bureau of Greater New York to which it forwarded whatever information in the “credit application” it deemed necessary. The evidence on this point is undisputed. Based on the results of this investigation (the bank had not as yet even seen the sales contract) the decision was made to accept the assignment upon the condition that the down payment be increased from $400 to $773. The dealer and purchaser then executed the conditional sale agreement, the automobile was delivered to the purchaser, the contract was assigned to the bank which then paid the dealer $2,500. The purchaser defaulted on the first payment and it has not been possible to locate him. The record shows that the address given by him was false. The bank now brings this action against the dealer alleging that, since the purchaser’s name and address appeared in the contract of sale and since the contract contained a warranty of the truthfulness of the facts contained therein, the dealer must bear the loss.
First, it seems clear from the language of the warranty that the dealer’s warranty was intended to cover only the substance of the transaction — that an automobile of a certain make and value was in fact sold, that a certain down payment was received, that insurance of a certain amount was obtained, and like matters. These are the facts within the dealer’s knowledge and which it is in a position to warrant, and which bear upon whether the contract represents a bona fide sale. It is in this context that the warranty was made that all statements of fact in the contract are true. Significant is the warranty of lack of knoxoledge of facts, such as falsity of address, which might render the contract unenforcible. It is not argued that the *621 dealer knew of the falsity of the purchaser’s credit representations. Further, the very existence of a separate document, not part of the contract, and containing no dealer warranty of accuracy, which contains all of the information intended to be used as the basis of the credit investigation, indicates that such information was in a separate category from the warranted facts. It is simply straining the forms of language and the custom of business to make the presence of the purchaser’s name and address in the sales contract mean that the dealer 'warranted the accuracy of such information as a credit representation. The name and address were not included in the contract as a credit representation nor was it ever intended by anyone that they be relied on as such. That was the function of the separate credit application.
Secondly, it is clear that the plaintiff bank did not prove the reliance necessary to a warranty action (Crocker-Wheeler Elec. Co. v. Johns-Pratt Co., 29 App. Div. 300, affd. 164 N. Y. 593; Personal Property Law, § 93). Both known practice and the evidence uncontradicted in this record establish that the bank did not trust in the purchaser’s credit representations. It made its own inquiry and employed a credit bureau to which it supplied, in the words of plaintiff’s loan officer, “ the names of the individuals concerned; the home addresses; the employment and the type of employment ’ ’. Only when the bank satisfied itself on the basis of its own independent investigation as to the reliability of the purchaser did it notify the dealer to complete the sale. If the bank or its credit bureau bungled the investigation that should be their risk, the taking of which is their business, not the dealer’s. I vote to reverse the judgment appealed from and dismiss the complaint.
Judgment affirmed, etc.